UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OMAR DAHIR,<br><br>                Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. C14-1285-TSZ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Omar Dahir seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications. He contends the ALJ erred by improperly rejecting probative medical and "other" source opinions, erroneously rejecting his testimony, and failing to prove that he can perform other jobs in the economy. Dkt. 14. As discussed below, the Court recommends **REVERSING** the Commissioner's final decision and **REMANDING** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Mr. Dahir is a 38 years old Somali immigrant. Somali is his primary language and he completed high school in Somalia. Tr. 569. Mr. Dahir has worked as an airport baggage handler, a fish cleaner and packer, a janitor, and a home health aide for his roommate. Tr. 579,

REPORT AND RECOMMENDATION - 1

1  582. He applied for both supplemental security income and disability insurance benefits,

2  alleging disability as of October 22, 2010. Tr. 42, 51. His applications were denied initially and

3  on reconsideration. Tr. 49, 58, 69, 81. The ALJ conducted a hearing on February 13, 2013,

4  finding Mr. Dahir not disabled. Tr. 14. As the Appeals Council denied Mr. Dahir's request for

5  review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

7  At step one of the five-step disability evaluation process,[1] the ALJ found that Mr. Dahir

8  met the insured status requirements and has not engaged in substantial gainful activity since the

9  alleged onset date. Tr. 16. Mr. Dahir has the severe impairments of osteoarthritis and low back

10 pain, but neither of these impairments meet or equal the requirement of a listed impairment.[2] Tr.

11 16-17. Considering these impairments, Mr. Dahir has the Residual Functional Capacity ("RFC")

12 to perform sedentary work with additional limitations. Tr. 18. Mr. Dahir can lift or carry a

13 maximum of ten pounds occasionally and frequently lift or carry small articles such as docket

14 files or small tools. Tr. 18. With normal breaks, Mr. Dahir can stand and/or walk for two hours

15 and sit for six hours of an eight hour workday. Tr. 18. He is limited to occasional reaching in

16 the front, lateral and overhead with his left arm. Tr. 18. Finally, Mr. Dahir must avoid

17 concentrated exposure to hazards. Tr. 18. At step four, this RFC precludes Mr. Dahir from

18 performing his past relevant work as a baggage handler, janitor, home health aide, and fish

19 cleaner/packer. Tr. 21. However, a Vocational Expert testified that Mr. Dahir could perform

20 the jobs of assembler and cashier II, which exist in significant numbers in the national economy.

21 Tr. 22. Accordingly, the ALJ determined at step five that Mr. Dahir is not disabled. Tr. 22-3.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

**DISCUSSION**

Mr. Dahir raises several assignments of error relating to the ALJ's evaluation of the evidence in the record. Dkt. 14. According to Mr. Dahir, the ALJ improperly ignored the opinions of Trula Thompson, M.D. and Annette Lund, A.R.N.P., that he is limited to less than sedentary work. Tr. 528, 532. Additionally, Mr. Dahir argues that the ALJ erroneously discredited his testimony. Tr. 20.

I. Medical Opinions

In arriving at Mr. Dahir's sedentary RFC, the ALJ purported to give significant weight to the two opinions of Department of Social and Health Services ("DSHS") reviewing physician Trula Thompson, M.D., issued in November 2011 and August 2012. Tr. 20, 521-24, 529-35. In November 2011, Dr. Thompson evaluated Mr. Dahir as capable of performing in a sedentary capacity. Tr. 523. By the August 2012 review, Dr. Thompson had downgraded Mr. Dahir to less than sedentary. Tr. 532. According to the ALJ, "[w]hile she did not explain the rationale for the claimant's change from sedentary to less than sedentary work in her evaluations, Dr. Thompson's assessment of his functional abilities is generally consistent with the objective medical findings and the observations of treatment providers." Tr. 20.

This finding ignores the heart of Dr. Thompson's August 2012 evaluation. Dr. Thompson noted, multiple times, the paucity of objective medical evidence available for review. Tr. 529-30. Dr. Thompson found that Mr. Dahir's reported impairments were only partially supported by medical evidence. Tr. 529. After noting the September 2011 DSHS Physical Functional Evaluation from Annette Lund, A.R.N.P., Dr. Thompson reported, "[n]o subsequent nor current medical records are included, which are required for an eval for potential SSI eligibility." Tr. 529. Dr. Thompson subsequently concluded that although previous DSHS

REPORT AND RECOMMENDATION - 3

evaluations had rated Mr. Dahir at light or sedentary exertion, "based on objective medical appears more likely to be found at sed at the least; and based on no current medical would not be eligible under program guidelines." Tr. 529. Dr. Thompson recommended obtaining a detailed physical examination to assess Mr. Dahir's neurology, gait, balance, and range of motion and obtain any interim evaluations and radiology. Tr. 529. Despite this recommendation, the record lacks a detailed clinical assessment by an "acceptable" medical source. *See*, 20 C.F.R. §§ 404.1513(a), 416.913(a).

The ALJ chose to resolve any discrepancy between Dr. Thompson's two evaluations by adopting the sedentary rating and dismissing the subsequent assessment. "Dr. Thompson did not cite objective findings to support this deterioration of the claimant's functioning, but did note that it is unlikely that the claimant's condition meets the requirements of Social Security disability." Tr. 19. However, as noted above, Dr. Thompson did not conclude that Mr. Dahir's *condition* fails to meet the requirements. Dr. Thompson opined that Mr. Dahir's condition probably warrants a sedentary, or less than sedentary, functional capacity, but the medical record is inadequate. Tr. 529. The medical record, rather than Mr. Dahir's physical impairments, is deficient to establish disability. ALJ's interpretation of Dr. Thompson's second opinion is not supported by the evidence in the record.

This misinterpretation of Dr. Thompson's review of the medical evidence results in a failure to develop the record as necessary to determine the true level of Mr. Dahir's impairments. "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate

REPORT AND RECOMMENDATION - 4

inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  This duty exists even if, as here, the claimant is represented by counsel.  *Id*.

The Acting Commissioner contends that the ALJ met this duty because the evidence was unambiguous and sufficient to draw a conclusion on the claims.  Dkt. 18 at 7.  The Court disagrees.  The ALJ made no finding that the record is insufficient to make a determination, but Dr. Thompson clearly concluded that Mr. Dahir's existing medical record demonstrated impairment that warranted further assessment.  Given the ALJ's purported reliance on Dr. Thompson's opinion, he was not free to ignore the concern or recommendations expressed in that opinion.  *Tonapetyan*, 242 F.3d at 1150-51.  Dr. Thompson, a non-examining DSHS consultant, is the only recent acceptable medical source in the record.  The medical examination and assessments were performed by Mr. Dahir's primary provider, Annette Lund, A.R.N.P., who is considered an "other source" and a lay witness.  *Turner v. Comm'r of Soc.Sec.*, 613 F.3d 1217, 1223-4 (9th Cir. 2010).  Without recent relevant medical evidence, the record is deficient and a full and fair determination is impossible.  This harmful error requires reversal and remand to obtain additional medical evidence, as suggested by Dr. Thompson, in order to ensure a sufficient record and proper consideration of the claims.[3]

II.     Lay Opinions

Annette Lund, A.R.N.P. is Mr. Dahir's primary provider.  She is a nurse practitioner and considered an "other source" under 20 C.F.R. § 404.151(d)(1).  Germane reasons are required for rejecting these lay witness opinions.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Ms. Lund assessed Mr. Dahir in August 2011 and August 2012.  In August 2011, Ms. Lund opined

---

[3] Because this case should be remanded for further development of the record and re-evaluation of Mr. Dahir's RFC in light of additional medical evidence, the Court need not address, at this point, Mr. Dahir's argument that the ALJ erred at step five.

REPORT AND RECOMMENDATION - 5

that Mr. Dahir could lift a maximum of ten pounds, could frequently lift or carry two pounds, and had postural restrictions.  Tr.  515.  Her 2012 assessment rated Mr. Dahir as "severely limited," meaning "unable to meet the demands of sedentary work."  Tr.  528.  She listed his diagnoses as frozen shoulder and chronic back pain, which affected his ability to stand, walk, lift, carry, push, pull, reach, stoop, and crouch.  Tr.  527.  The ALJ gave little weight to this assessment, because Ms. Lund is not an acceptable source of medical opinions under the Social Security Administration regulations, her opinions are inconsistent with Mr. Dahir's actual abilities, the medical findings do not demonstrate such a severe impairment, and her notes do not show objective testing for the assessment.  Tr.  21.

The Social Security Rulings provide that evidence from "other sources," such as nurse practitioners, may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function."  SSR 06-03p.  Despite this, the ALJ need only provide a germane reason for rejecting the opinion of these "other sources."  *Lewis*, 236 F.3d at 511.  Here, the ALJ gives at least one germane reason for rejecting Ms. Lund's assessment of Mr. Dahir's impairment-- the assessments contain no evidentiary support.  Tr.  515-6, 526-8. Ms. Lund points to radiology reports and medical records for supporting evidence, but the documents are not attached to the assessments.  The most recent shoulder imaging in the record is from February 2010, before the alleged onset date.  Tr.  473-4.  And, Ms. Lund's own medical records focus mainly on other issues, such as Mr. Dahir's diabetes, abdominal pain, and hemorrhoids.  Tr. 536-59.

Ms. Lund's records cite the history of motor vehicle accidents and resulting fractures, frozen shoulder, and residual pain.  However, her notes show no objective testing associated with these complaints.  Tr. 550-2.  It is unclear how Ms. Lund arrived at the lift/carry weight and

REPORT AND RECOMMENDATION - 6

"severely limited" rating. This lack of evidence undermines the assessment and opinion and provides a germane reason for the ALJ to accord little weigh to Ms. Lund's opinion. There is no harmful error.

III.     Credibility

The ALJ conducts a two step analysis when assessing the credibility of a claimant's testimony about symptoms and subjective pain. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-6 (9th Cir. 2007). The ALJ must first determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. at 1036 (internal quotation and citation omitted). Then, unless there is affirmative evidence showing that the claimant is malingering, the ALJ must have clear and convincing reasons for rejecting the evidence. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Here, the ALJ cites lack of objective evidence, conservative medical treatment, inconsistencies with activities of daily living, and ability to work as reasons to reject Mr. Dahir's allegations of severe physical disability. Tr. 19-20. Mr. Dahir contends that these reasons are not clear and convincing and supported by the record. Dkt. 14 at 13-15.

Here, the ALJ gave at least one valid reason to discount Mr. Dahir's testimony—that "his demonstrated abilities are not consistent with the presence of a physical disability." Tr. 20. Indeed, activities of daily living inconsistent with the alleged level of disability are relevant to credibility determination. *Lingenfelter*, 504 F.3d at 1040. In support of this determination, the ALJ points to notes from January 2010, several months before his alleged onset date but significantly after the accidents that caused the impairments. Tr. 20, 413. According to the January 2010 medical records, Mr. Dahir expressed a desire to control his diabetes through diet and exercise. Tr. 20, 413. His strategy to control his diabetes consisted of eating sweets until

REPORT AND RECOMMENDATION - 7

his blood sugar was high and then running to reduce his blood sugar.  Tr.  413.  He also stated that he enjoyed running, swimming and working out at the gym, but had not been going recently.  Tr.  413.  Almost a year after the alleged onset date, Mr. Dahir reported that he walked, but had no regular exercise program.  Tr.  20, 448.  In January 2012, Mr. Dahir stated that could walk for thirty minutes before needing a ten minute rest.  Tr. 20, 265.  At the hearing in December 2012, Mr. Dahir testified that he uses a cane all the time, and he could very slowly walk only one to two blocks without rest.  Tr.  584-85, 20.  However, he also stated that he sometimes walked ten blocks to his mosque.  Tr.  592, 20.

The ALJ found many of Mr. Dahir's statements about his physical capacity to be inconsistent with his allegations of total disability.   This also pertains to Mr. Dahir's ability to perform household tasks.  The ALJ noted that Mr. Dahir can prepare food, wash dishes, do laundry, and shop for groceries.  Tr. 20, 249-50, 262-3.  He can perform light tasks, often with one hand, while his roommate helps with the heavier jobs that require both arms.  Tr.  583, 262.  Additionally, Mr. Dahir spent three months working as a part-time caretaker for his roommate.  Tr.  20, 582-3.  He performed easy tasks, like cooking and cleaning with one arm.  Tr.  583.  The ALJ found these activities are not consistent with total disability, but are consistent with a sedentary level of exertion.[4]

Mr. Dahir argues that the ALJ mischaracterized his activities and drew unreasonable inferences about his ability to perform them.  Dkt. 14 at 15.  But, resolution of conflicts and ambiguities is the province of the ALJ.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§  404.1567(a), 416.967(a).

REPORT AND RECOMMENDATION - 8

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Even if there are other possible interpretations, the Court may not second guess when an ALJ's interpretation is reasonable and based on substantial evidence in the record. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ reasonably interpreted Mr. Dahir's physical capabilities and activities of daily living as consistent with sedentary work.

Therefore, the ALJ gave at least one valid reason to discount Mr. Dahir's testimony. The ALJ's credibility determination should be affirmed, even assuming the other reasons the ALJ gave were invalid. *Carmickle v. Comm'r of Soc.Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including erroneous reasons among the valid reason to discount a claimant's credibility does not negate the ALJ's determination and is, at most, harmless error).

However, the ALJ committed significant, harmful error by ignoring the medical consultant's concern about the lack of medical evidence and recommendation to obtain detailed clinical evaluation of Mr. Dahir's physical impairments. The record is not fully developed as required to assure the Court that there has been proper consideration of Mr. Dahir's interests. As a result, case must be reversed and remanded for full development of the medical record and re-evaluation of Mr. Dahir's claims.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should further develop the medical evidence in keeping with the recommendation made by Dr. Thompson. The ALJ should then conduct a new disability determination in light of the new evidence, using the five step process.

A proposed order accompanies this Report and Recommendation. Any objection to this

Report and Recommendation must be filed and served no later than **March 4, 2015**.  If no objections are filed, the Clerk should note the matter for **March 6,** 2015, as ready for the Court's consideration on.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 18th day of February, 2015.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10